# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 1:70-CV-02008-JDT |
| ) | Judge James D. Todd |
| ) | |
| BOARD OF EDUCATION OF THE CITY ) | |
| OF MILAN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## AGREED ORDER OF DISMISSAL

The United States has reviewed the compliance of the City of Milan Special School District ("District") with the Consent Decree approved by this Court on January 7, 2009. This review included the District's reports under the 2009 Consent Decree, its responses to requests for information from the United States, and a site visit from November 2-3, 2016. Based on a review of the information provided by the District and other data, the United States advised the District that it has fulfilled its affirmative desegregation obligations under the 2009 Consent Decree and applicable federal law. As indicated by the signatures below, the parties asked the Court to approve this Agreed Order of Dismissal, declaring that the District has achieved unitary status in the final areas of student assignment and quality of education, and dismissing this case.

## I. PROCEDURAL HISTORY

This desegregation case originated on June 23, 1970, when the United States filed a complaint against the Gibson County School District and the City of Milan School District. This Court approved a desegregation plan for the City of Milan School District on September 1, 1970. Amended Desegregation Plan, July 24, 1970 ("1970 Plan"); Order, Sept. 1, 1970 ("1970 Order").

When this litigation began, the Milan City School District served the geographic areas that

are now served by the Milan Special School District. The Milan Special School District was formed under state law in 1982, and was for many years subject to the 1970 Plan and 1970 Order. In 2005, along with the United States and the four other school districts in Gibson County, the District entered into an inter-district student transfer consent order. *See* Consent Order, Jan. 11, 2005, at 3 ("2005 Consent Order").

On January 7, 2009, this Court approved a new Consent Decree, which recognized that the District had satisfied its desegregation obligations and operated a unitary school system in the areas of faculty and staff assignment, transportation, extracurricular activities, and facilities. ECF Doc. No. 53 (Jan. 7, 2009). The Consent Decree noted that the student assignment and quality of education factors required further examination in two areas: (1) the District's administration of disciplinary measures, and (2) admission to the District's gifted program, for which no black students had been referred for evaluation in the 2006-7 and 2007-8 school years. *Id.* at 6-7. The Decree required the District to satisfy its obligations in the student assignment and quality of education areas, and ordered the District to retain the Southeastern Equity Center to review its policies and procedures pertaining to discipline and its gifted and talented program. *Id.* at 7.

The United States carefully monitored the District's compliance with the 2009 Consent Decree. This included analyzing the District's reports required by the Consent Decree, additional information provided by the District and other data, and a site visit in November 2016. By letter to the District on February 24, 2017, the United States shared its conclusion that the District had met its remaining desegregation obligations. On March 3, 2017, the parties filed a proposed joint motion to dismiss the case and this proposed Agreed Order of Dismissal.

II. **LEGAL ANALYSIS**

It has long been recognized that the goal of a school desegregation case is to convert

promptly a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. *Green v. County Sch. Bd. of New Kent Cty., Va.*, 391 U.S. 430, 442 (1968). The standard established by the Supreme Court for determining whether a school district has achieved unitary status, thus warranting termination of judicial supervision, is: (1) whether the school district has fully and satisfactorily complied with the court's desegregation orders for a reasonable period of time; (2) whether the school district has eliminated the vestiges of past *de jure* discrimination to the extent practicable; and (3) whether the school district has demonstrated a good faith commitment to the whole of the court's order and to those provisions of the law and the Constitution which were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell,* 498 U.S. 237, 248-50 (1991).

The Supreme Court has identified six areas, commonly known as the "*Green* factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual school system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green*, 391 U.S. at 435; *see also Dowell*, 498 U.S. at 250. But the *Green* factors are not intended to be a "rigid framework"; the Supreme Court has approved consideration of other indicia, such as "quality of education," as important factors in determining whether the district has fulfilled its desegregation obligations. *See Freeman*, 503 U.S. at 492-93.

### III. STIPULATED FACTS

In the 1970-71 school year, the District enrolled 2,421 students, of whom 465 (19%) were black, 1,950 (80%) were white, and 6 (1%) were other, as illustrated below.

**District Student Enrollment
1970-71 School Year**

| *Schools* | *Black* | *White* | *Other* | *Total* |
|---|---|---|---|---|
| Polk Clark School (K-3) | 155 (21.7%) | 555 (77.8%) | 3 (0.4%) | 713 |
| McKellar School (4-6) | 140 (22.1%) | 490 (77.4%) | 3 (0.4%) | 633 |
| Park Avenue School (7-9) | 92 (16%) | 488 (84%) | 0 (0%) | 580 |
| Milan High (10-12) | 78 (16%) | 417 (84%) | 0 (0%) | 495 |
| **District-Wide** | **465 (19.2%)** | **1,950 (80.5%)** | **6 (0.3%)** | **2,421** |

*Source:* Dep't of Health, Educ. & Welfare/Office for Civil Rights, Pub. & Elementary Schs. (1970-71).

In the 2015-16 school year, the District enrolled 1,925 students, of whom 509 (26%) were black, 1,334 (69%) were white, and 17 (1%) were other, as illustrated below.

**District Student Enrollment
2015-16 School Year**

| *Schools* | *Black* | *White* | *Other* | *Total* |
|---|---|---|---|---|
| Milan Elementary (K-4) | 197 (28%) | 483 (68.5%) | 25 (3.5%) | 705 |
| Milan Middle (5-8) | 158 (25.5%) | 428 (69.5%) | 31 (5%) | 617 |
| Milan High (9-12) | 154 (25.5%) | 423 (70.1%) | 26 (4.4%) | 603 |
| **District-Wide** | **509 (26.4%)** | **1,334 (69.3%)** | **82 (4.3%)** | **1,925** |

*Source:* District Annual Report (2016).

### A. Disciplinary Measures

Based on its review of the District's compliance with the 2009 Consent Decree, the United States determined that the District has complied with this Consent Decree and taken concerted and good-faith measures to administer discipline in a nondiscriminatory manner. During implementation of the 2009 Consent Decree, the District consulted with the Southeastern Equity Center and revised its disciplinary policies to reduce its reliance on the use of out-of-school suspensions and alternative school assignments as punitive measures. In addition, the District established procedures to address and prevent racial disparities in the disciplinary process. For

example, classroom teachers may refer students to administrators for disciplinary purposes, but only administrators have the authority to suspend students or assign them to alternative school. Administrators also review referral lists at least once annually for evidence of racial disparities in teacher referrals. If such disparities are found, administrators respond by taking steps such as counseling or training the teacher(s). Students may not be suspended or assigned to alternative school unless certain criteria in the District's revised policies have been met. For example, except in cases of specific, serious misconduct identified in these policies, students may not be referred to in-school suspension until their third referral for the same type of incident or behavior.

### B. Admission to Gifted and Talented Programs

After the 2009 Consent Decree, the District consulted with the Southeastern Equity Center regarding its gifted and talented program. The District screens for gifted and talented eligibility under Gifted Child Find. The District provides services to students who are identified as gifted under the eligibility criteria set by the Tennessee Department of Education based on their individual needs as determined by the student's Individualized Education Program ("IEP") team. Services can include counseling, accommodations, and direct services. Approximately 1.3% of the District-wide student body is served by Intellectually Gifted Special Education. Since the 2009 Consent Decree, black students have been referred for consideration in the gifted program and have constituted up to 7% of the students receiving gifted services in certain years.

Although black students continue to qualify for gifted services at a lower rate than their enrollment percentages, the District has established race neutral policies and procedures for its gifted assessment process that exceed state requirements. For example, in the 2010-11 school year, the District initiated a policy to screen all students in both the 4th and 7th grades, even though state guidelines require screenings at only one grade level. Further, the District has designated a gifted education instructor to teach 6th grade drama, giving her the opportunity to informally

assess every student who passes through that grade for potential evaluation for the gifted program.

In addition, to address the issue of increasing diversity in accelerated learning and college preparatory classes, the District increased its Advanced Placement ("AP") and Honors courses to encourage greater participation from a larger percent of the student body. The District places no restrictions on AP or Honors enrollment, both of which are open to all students. Students who score in a certain range on the PSAT, an AP identifier, are encouraged to enroll, but the final decision is left to the individual students. In the 2015-16 school year, black students comprised 17% of high school seniors enrolled in AP and Honors courses.

## IV. DECLARATION OF UNITARY STATUS AND DISMISSAL OF THE CASE

Based on the information and data provided by the District and the applicable law, the Court finds that the District has acted in good faith to comply with the Court's 2009 Consent Order for a reasonable period of time, has refrained from taking actions that would reverse its progress in desegregating its system, eliminated the vestiges of past *de jure* discrimination to the extent practicable, and is operating a unitary school system. The Court therefore concludes that the Milan Special School District has met the legal standards for a declaration of unitary status and is entitled to dismissal of this case. *Freeman*, 503 U.S. at 492.

Accordingly, it is hereby ORDERED that all prior injunctions against the Milan Special School District are DISSOLVED, jurisdiction is TERMINATED, and the case against this District is DISMISSED WITH PREJUDICE.

So ORDERED, this __6th__ day of __March_____, 2017.

                **s/James D. Todd**_____
                United States District Judge

**Approved:**

**For Plaintiff United States of America**

                                                                                         Respectfully submitted,

| | |
|---|---|
| Lawrence J. Laurenzi | T.E. WHEELER |
| Acting United States Attorney | Acting Assistant Attorney General |
| Western District of Tennessee | |
| | |
| s/ S. Keenan Carter | s/ Colleen Phillips |
| S. KEENAN CARTER | EMILY H. McCARTHY |
| Assistant United States Attorney | COLLEEN PHILLIPS |
| 167 North Main Street, Suite 800 | California Bar No. CA Bar # 298146 |
| Memphis, TN 38103 | United States Department of Justice |
| (901) 544-4231 | Civil Rights Division |
| keenan.carter@usdoj.gov | Educational Opportunities Section, PHB |
| TN Bar #23386 | 950 Pennsylvania Avenue, NW |
| | Washington, DC 20530 |
| | (202) 514-4092 |
| | Colleen.phillips@usdoj.gov |

**For the Milan Special School District**:

                                                                         /s/Collins Bonds
                                                                        COLLINS BONDS
                                                                        Counsel for the Milan Special School District
                                                                        Kizer, Bonds, Hughes & Bowen, PLLC
                                                                        201 Bancorpsouth Bank Building
                                                                        1026 College Street
                                                                        P.O. Box 320
                                                                        Milan, TN 38358
                                                                        (731) 686-1198
                                                                        Fax (731) 686-9868

This the 3rd day of March 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

W. Collins Bonds
KIZER BONDS HUGHES & BOWEN
P.O. Box 320
Milan, TN 38358
731-686-1198
Fax: 731-686-9868
Email: cbonds@kbhblaw.com


Dated: March 3, 2017

                                        s/ S. Keenan Carter
                                        S. KEENAN CARTER
                                        Assistant United States Attorney
                                        167 North Main Street, Suite 800
                                        Memphis, TN   38103
                                        (901) 544-4231
                                        keenan.carter@usdoj.gov
                                        TN Bar #23386